IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A&C TRADE CONSULTANTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOEL E. ALVAREZ, et al.,<br><br>Defendants. | Case No. 18-cv-05356-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION TO ENTER DEFAULT JUDGMENT**<br><br>Re: Doc. No. 74 |

Before the Court is plaintiff A&C Trade Consultants, Inc.'s ("A&C") Amended Motion to Enter Default Judgment, brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, and filed April 28, 2021.[1] Having read and considered the papers filed in support of the instant motion, the Court rules as follows.[2]

## BACKGROUND[3]

A&C sells "high quality industrial washdown equipment." (See Compl. ¶ 1.) In 1996, A&C hired defendant Joel E. Alvarez ("Alvarez") and, "[i]n recent years," he "was responsible for overseeing . . . the South American market." (See id. ¶ 9.)

In 2017, however, A&C "became aware" that its "monies . . . were being diverted

---

[1] On April 28, 2021, A&C served each defendant named in the above-titled action with notice of the instant motion. To date, no defendant has filed a response.

[2] By order filed June 1, 2021, the Court took the matter under submission.

[3] The following facts are taken from the complaint and declarations filed in support of the motion to enter default judgment.

into an account in the name[s] of Alvarez" and defendants Revolution Racing Team ("RRT") and Importtrix, two businesses A&C "understood to be owned by Alvarez and his [now ex-wife], Ethel Nogal ("Nogal")." (See Hsu Decl. ¶ 4; see also Compl. ¶ 10.)[4] Additionally, A&C "learned" that Alvarez and Nogal, along with defendant Martin Alonso Guerra Espinosa ("Espinosa"), "had been utilizing the trade secrets of A&C . . . to help establish and promote their joint business venture," namely, defendant Suministros Industriales Joma S.A.S. ("SIJOMA"). (See id. ¶ 11.)

Based on the above allegations, A&C, on August 30, 2018, filed the instant action, by which it asserts the following thirteen "Claims for Relief": (1) "Misappropriation of Trade Secrets under the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1))," (2) "Misappropriation of Trade Secrets under California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, et seq.," (3) "Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030," (4) "Violation of Cal. Penal Code § 502," (5) "Violation of Cal. Penal Code § 528.5," (6) "Violation of Cal. Penal Code § 496(c)," (7) "Breach of Contract," (8) "Breach of Fiduciary Duty," (9) "Conversion," (10) "Money Had and Received," (11) "Fraud," (12) "Unjust Enrichment," and (13) "Unlawful, Unfair[,] and Fraudulent Competition under Cal. Bus[.] and Prof. Code § 17200, et seq."[5]

Subsequently, on October 16, 2018, A&C completed service of the summons and complaint on RRT and Importtrix, followed by service on Alvarez on November 14, 2018. (See Doc. Nos. 15-17). On March 15, 2019, after Alvarez, RRT, and Importtrix failed to respond to the complaint or otherwise appear, A&C moved for entry of default against those three defendants (see Doc. No. 26), which defaults were entered by the Clerk of Court on March 19, 2019 (see Doc. No. 27). On January 2, 2020, A&C then completed

---

[4] By order filed March 19, 2021, the Court approved a stipulation for dismissal of A&C's claims against Nogal.

[5] The above numbers do not fully correspond to the claims asserted by A&C. In particular, A&C mislabeled the eighth of the above-listed claims as "Ninth Claim for Relief" and continued to mislabel, in the same manner, the five claims following thereafter.

1 service on Espinosa and SIJOMA. (See Doc. Nos. 41-42.) On March 4, 2020, A&C

2 moved for entry of default against those two defendants (see Doc. No. 43), which

3 defaults were entered by the Clerk of Court on March 5, 2020 (see Doc. No. 44).

4 Default having been entered against Alvarez, RRT, Importtrix, Espinosa, and

5 SIJOMA, A&C, on March 19, 2021, moved for entry of default judgment against all five

6 defendants. (See Doc. No. 69.) On March 23, 2021, however, the Court, after identifying

7 specific deficiencies in A&C's motion, denied the motion without prejudice to A&C's filing

8 an amended motion; additionally, in so ruling, the Court directed A&C, in any such

9 amended motion, to "address the issue of personal jurisdiction, cite to the particular

10 allegations in the complaint on which [A&C] relies to establish liability, and cite to the

11 particular evidence on which [A&C] relies to support its claim for damages." (See Order

12 at 2:14-16.)

**DISCUSSION**

By the instant motion, A&C seeks, pursuant to Rule 55(b)(2), entry of a default judgment against Alvarez, RRT, Importtrix, Espinosa, and SIJOMA, as well as damages, various forms of equitable relief, and attorneys' fees and costs.

**A.  Jurisdiction**

Before a default judgment may be entered, the district court must determine it has subject matter jurisdiction over the action and personal jurisdiction over each of the defendants. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) (holding, where entry of default judgment is sought, court has "affirmative duty to look into its jurisdiction over both the subject matter and the parties").

Here, the Court has original jurisdiction over A&C's claims alleging violations of the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, see 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining claims, see id. § 1367. Additionally, the Court has personal jurisdiction over Alvarez, "an individual residing within this judicial district." (See Compl. ¶ 2.) As set forth below, however, personal jurisdiction has not been established as to the remaining defendants.

3

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the . . . forum," see Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation and citation omitted), and depending on the nature and extent of its contacts with the forum, "a defendant may be subject to either general or specific personal jurisdiction," see Easter v. Am. W. Fin., 381 F.3d 948, 960 (9th Cir. 2004). "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

Here, although the Court, as noted, directed A&C, in the instant motion, to "address the issue of personal jurisdiction" (see Order at 2:14), A&C has failed to do so and, consequently, has not met its burden. With respect to RRT and Importtrix, A&C alleges both "business entit[ies]" are "doing business within this judicial district" (see Compl. ¶¶ 4-5), but has provided no details as to the nature and extent of any such contacts. As to Espinosa, "an individual residing in Medellin, Col[o]mbia" (see id. ¶ 6), and SIJOMA, "a business entity . . . doing business in Medellin, Col[o]mbia" (see id. ¶ 7), A&C fails to allege any contacts whatsoever.

Accordingly, to the extent A&C seeks entry of a default judgment against RRT, Importtrix, Espinosa, and SIJOMA, the motion will be denied. See In re Tuli, 172 F.3d at 712 (holding "judgment entered without personal jurisdiction over the parties is void").

The Court next turns to whether entry of a default judgment against Alvarez is appropriate.

**B.  Eitel Factors**

Once the court establishes it has jurisdiction, its "decision whether to enter a default judgment is a discretionary one." See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit considers the following factors to determine whether entry of a default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

4

material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the above-listed factors, courts "must take the well-pleaded factual allegations of [a complaint] as true." See Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

### 1. First Eitel Factor: Possibility of Prejudice to Plaintiff

In addressing the first factor, the Court considers whether the plaintiff "will be prejudiced if the Court denies default judgment." See Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010) (citing Eitel, 782 F.2d at 1471). Here, Alvarez has failed to participate in the above-titled action and, consequently, A&C will be unable to adjudicate its claims, recover damages, or pursue equitable relief unless the Court enters a default judgment. See Vietnam Reform Party v. Viet Tan - Vietnam Reform Party, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (holding plaintiff "would be prejudiced absent a default judgment" where defendants "ha[d] not appeared in . . . long-running action").

Accordingly, the first factor weighs in favor of entry of a default judgment.

### 2. Second and Third Eitel Factors: Merits of the Claim and Sufficiency of the Complaint

In addressing the second and third factors, the Court considers whether the plaintiff "has plead facts sufficient to establish and succeed upon its claims." See Craigslist, 694 F. Supp. 2d at 1055. In that regard, as noted above, the Court "must take the well-pleaded factual allegations of [the complaint] as true." See Cripps, 980 F.2d at 1267. "[N]ecessary facts not contained in the pleadings," however, "are not established by default." Id.

Here, A&C asserts, as against Alvarez, claims under the Defend Trade Secrets Act ("DTSA"), the California Uniform Trade Secrets Act ("CUTSA"), the Computer Fraud and Abuse Act ("CFAA"), California Penal Code §§ 502, 582.5, and 496(c), as well as for breach of contract, breach of fiduciary duty, conversion, money had and received, fraud,

5

unjust enrichment, and under the Unfair Competition Law ("UCL").

The Court addresses each of the above-listed claims in turn.

### a. DTSA and CUTSA Claims

A plaintiff bringing claims under the DTSA and the CUTSA must show "(1) the plaintiff owned a trade secret[,] (2) the defendant misappropriated the trade secret[,] and (3) the defendant's actions damaged the plaintiff." See Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (internal quotations and citations omitted).[6] Here, A&C has submitted evidence that Alvarez "ha[d] access to company trade secrets," in particular, "customer lists," that he shared such information with Espinosa, that he and Espinosa "would . . . provide specific wire instructions . . . to the buyers" of A&C's products, and that, on at least one occasion, "payment [was] wired into RRT's and Importtrix'[s] account." (See Hsu Decl. ¶¶ 2, 7.) Consequently, A&C has established its claim against Alvarez under the DTSA and CUTSA.

### b. CFAA Claim

To assert a claim under the CFAA based, as here, on a violation of § 18 U.S.C. § 1030(a)(4), a plaintiff must show the defendant "(1) accessed a protected computer, (2) without authorization or exceeding such authorization that was granted, (3) knowingly and with intent to defraud, and thereby (4) furthered the intended fraud and obtained anything of value, causing (5) a loss to one or more persons during any one-year period aggregating at least $5,000 in value." See LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132 (9th Cir. 2009) (internal quotations, citations, and alterations omitted). Here, A&C has submitted a declaration stating Alvarez's "access to the accounting system was limited" and that he nonetheless "was able to manipulate the computer system and security protocols in order to . . . cover up the sale of products to A&C customers with

---

[6] "The elements of misappropriation under the DTSA are similar to those under the CUTSA, except that the DTSA applies only to misappropriations that occur or continue to occur on or after its date of enactment on May 11, 2016." See id. Here, A&C has provided evidence of misappropriations that continued to occur after May 11, 2016. (See, e.g., Hoe Decl., Ex. C, Attach. A at 1.)

6

payments going directly into [his] business accounts." (See Hsu Decl. ¶ 2.) Additionally, A&C has submitted records and a report showing A&C, as a result, incurred within a one-year period an aggregate loss in excess of $5000. (See Hoe Decl., Ex. C, Attach. A at 9.) Consequently, A&C has established its claim against Alvarez under the CFAA.

### c. California Penal Code Claims

Although A&C alleges claims under California Penal Code §§ 502, 582.5, and 496(c), it fails to discuss such claims in the instant motion, let alone "cite to the particular allegations in the complaint on which [A&C] relies to establish liability." (See Order at 2:14-15.) Consequently, A&C has not established its claims for violations of the California Penal Code against Alvarez.

### d. Breach of Contract Claim

To prevail on a claim for breach of contract, a plaintiff must prove "(1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." See Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014). Here, A&C has shown it entered into a "Non-Disclosure Agreement" with Alvarez, by which he agreed not to "disclos[e] . . . any trade secrets" or "any . . . confidential or proprietary information." (See Hsu Decl., Ex. A §§ 1, 2.) A&C alleges Alvarez disclosed such information to Espinosa (see Compl. ¶ 57), resulting in damages to A&C (see Hsu Decl. ¶ 7). Consequently, A&C has established its claim for breach of contract against Alvarez.

### e. Breach of Fiduciary Duty Claim

To state a claim for breach of fiduciary duty, a plaintiff must prove the following: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." See Gutierrez v. Girardi, 194 Cal. App. 4th 925, 932 (2011) (internal quotation and citation omitted). As to the first element, "an officer who participates in management of the corporation . . . is a fiduciary of the corporation," whereas "a nominal officer with no management authority is not a fiduciary." See Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 981 (N.D. Cal. 2006) (internal quotations and

7

citations omitted). Here, although A&C states Alvarez "was responsible for developing and maintaining relations with customers" (see Hsu Decl. ¶ 2), there is no allegation or evidence to support a finding that Alvarez was an officer of A&C, let alone an officer who participated in the management of A&C. Consequently, A&C has not established its claim for breach of fiduciary duty against Alvarez.

### f. Conversion Claim

To establish a claim for conversion, a plaintiff must prove (1) "plaintiff's ownership or right to possession of personal property," (2) "defendant's disposition of property in a manner inconsistent with plaintiff's property rights," and (3) "resulting damages." See Voris v. Lampert, 7 Cal. 5th 1141, 1150 (2019) (internal quotations and citations omitted). Here, A&C has submitted evidence showing Alvarez deposited into his own bank account "at least 636 checks, made payable to [A&C]," as well as evidence showing "wire transfers from known [A&C] customers" into that account. (See Hoe Decl., Ex. C, Attach. A at 1, 3.) Consequently, A&C has established its claim for conversion against Alvarez.

### g. Money Had and Received Claim

To prevail on a claim for money had and received, a plaintiff must prove "(1) the defendant received money, (2) the money received by the defendant was for the use of the plaintiff, and (3) the defendant is indebted to the plaintiff." See Rasmussen v. Dublin Rarities, 2015 WL 1133189, at *12 (N.D. Cal. Feb. 27, 2015). Here, A&C has submitted evidence showing "at least $2,280,609 in [A&C's] sales" was deposited into Alvarez's account. (See Hoe Decl., Ex. C, Attach. A at 1.) Consequently, A&C has established its claim for money had and received against Alvarez.

### h. Fraud Claim

An action for fraud based on concealment has the following elements: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he

8

had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." See In re Yahoo! Inc. Customer Data Sec. Breach Litig., 313 F. Supp. 3d 1113, 1133 (N.D. Cal. 2018). Here, A&C has not alleged or offered any evidence showing Alvarez had any such duty. Consequently, A&C has not established its claim for fraud.

### i. Unjust Enrichment

Although A&C asserts a "claim" for unjust enrichment, "unjust enrichment is not a cause of action" but, rather, "a general principle underlying various doctrines and remedies." See Jogani v. Superior Ct., 165 Cal. App. 4th 901, 911 (2008). Consequently, the Court will consider the question of unjust enrichment in connection with A&C's request for monetary relief.

### j. UCL Claim

Lastly, A&C brings a claim under the UCL, which prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." See Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999) (internal quotations and citations omitted). As to this claim, however, A&C, contrary to the Court's direction, has failed to "cite to the particular allegations in the complaint on which [A&C] relies to establish liability." (See Order at 2:14-15.) Consequently, A&C has not established its claim against Alvarez under the UCL.

### k. Summary of Claims

In sum, the Court finds A&C has established its claims, as asserted against Alvarez, under the DTSA, CUTSA, and CFAA, as well as for breach of contract, conversion, and money had and received.

Accordingly, the second and third factors weigh in favor of entry of a default judgment.

### 3. Fourth Eitel Factor: Sum of Money at Stake

In addressing the fourth factor, the Court "examines the amount of money at stake in relation to the seriousness of a defendant's conduct." See Craigslist, 694 F. Supp. 2d

9

at 1060. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged"; however, "when . . . tailored to the specific misconduct of the defendant, default judgment may be appropriate." See Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) (internal quotations and citations omitted). Here, the amount of money at stake, specifically, $2,280,609, is substantial, but at the same time tailored to the specific misconduct of the defendant, namely, the amount of A&C's sales deposited into Alvarez's bank account. (See Hoe Decl., Ex. C, Attach. A at 1.)

Accordingly, the fourth factor weighs in favor of entry of a default judgment.

### 4. Fifth Eitel Factor: Possibility of Dispute Concerning Material Facts

Upon entry of default, as noted, the defendant is deemed to have admitted all well-pleaded facts in the complaint. See Cripps, 980 F.2d at 1267. Here, Alvarez, despite having been served with the complaint and instant motion, has not responded to the complaint or moved to set aside the Clerk's entry of default, and thus has made clear he does not intend to contest the allegations asserted against him. Indeed, "Alvarez [has] admitted to taking [A&C's] money." (See Hsu Decl. ¶ 12.)

Accordingly, the fifth factor weighs in favor of entry of a default judgment.

### 5. Sixth Eitel Factors: Whether Default was Due to Excusable Neglect

As noted, Alvarez has been served with both the complaint and the instant motion. Consequently, absent an explanation for Alvarez's failure to appear, his default is not reasonably attributable to excusable neglect. See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding default "[could]not be attributed to excusable neglect" where defendants "were properly served with the [c]omplaint, the notice of entry of default, as well as the papers in support of the instant motion").

Accordingly, the sixth factor weighs in favor of entry of a default judgment.

### 6. Seventh Eitel Factors: Policy Favoring Decision on the Merits

"[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted." See Craigslist,

694 F. Supp. 2d at 1061 (internal quotation and citation omitted). Here, Alvarez has failed to participate in the instant action, preventing a decision on the merits.

Accordingly, the seventh factor weighs in favor of entry of a default judgment.

### 7. Summary of Eitel Factors

In sum, the Eitel factors weigh in favor of entry of a default judgment against Alvarez. The Court next turns to the relief requested.

## C. Relief

As noted, A&C seeks an order awarding damages, various forms of equitable relief, and attorneys' fees and costs. The Court addresses each such request in turn.

### 1. Damages

A&C seeks compensatory damages in the amount of $2,280,609, treble damages in the amount of $1,252,419, and punitive damages in the amount of $75,000.

With respect to compensatory damages, A&C has shown "at least $2,280,609 in [A&C's] sales were deposited into [Alvarez's] account at Bank of America." (See Hoe Decl., Ex. C, Attach. A.) As A&C acknowledges, however, Alvarez has "made some payments, in the approximate sum of $160,000." (See Hsu Decl. ¶ 12.)

Next, with respect to treble damages, A&C cites no authority and provides no argument as to why it is entitled to such relief.

Lastly, in determining whether punitive damages are appropriate, "the Court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of [the defendant's] financial condition." See Shanghai Automation Instrument Co., 194 F. Supp. 2d at 1011. Here, A&C offers no evidence as to Alvarez's financial condition.

In sum, the Court finds A&C is entitled to compensatory damages in the amount of $2,120,609, a sum equal to $2,280,609 minus $160,000.

### 2. Equitable Relief

A&C requests the following forms of equitable relief: (1) "a constructive trust on all individuals and entities who come in possession or receive benefit from the use of A&C's

11

monies and property"; (2) "an injunction prohibiting [d]efendants and/or non-parties who come in receipt of A&C's monies and property . . . from distributing the money or using it in any manner until it is returned to A&C's possession"; and (3) "an order requiring A&C's monies to be returned as well as any ill-gotten benefits received by [d]efendants or any other entity or individual who received a benefit from the use of A&C's monies and property." (See Mot. at 13:8-15.) It is well-established that "equitable relief is not appropriate where an adequate remedy exists at law." See Schroeder v. United States, 569 F.3d 956, 963 (9th Cir. 2009). Here, as discussed above, A&C seeks, and in fact has, an adequate remedy at law.

Accordingly, the Court denies A&C's request for equitable relief.

**3. Attorneys' Fees and Costs**

Although A&C has not identified any statute that provides for attorneys' fees and costs, "[t]he DTSA and CUTSA authorize an award of reasonable attorneys' fees to the prevailing party if the trade secret was willfully and maliciously appropriated." See DiscoverOrg Data, LLC v. Bitnine Glob., Inc., 2020 WL 6562333, at *10 (N.D. Cal. Nov. 9, 2020). Here, as discussed above, the Court has found Alvarez willfully and maliciously appropriated A&C's trade secrets. In connection with the instant motion, however, A&C has not sought a specified sum constituting fees and costs incurred, let alone provided any evidence in support thereof.

Accordingly, A&C's request for attorneys' fees and costs will be denied without prejudice to A&C's filing, pursuant to the Local Rules of this District, a motion for such relief.

**CONCLUSION**

For the reasons set forth above, A&C's motion for default judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent A&C seeks a default judgment against Alvarez, the motion is GRANTED, and A&C shall have judgment against Alvarez in the amount of $2,120,609.

2. In all other respects, the motion is DENIED; to the extent A&C seeks to recover its attorneys' fees and costs under the DTSA and CUTSA, however, such denial is without prejudice to A&C's filing a separate motion pursuant to Civil L.R. 54-5.

**IT IS SO ORDERED.**

Dated: July 12, 2021

MAXINE M. CHESNEY
United States District Judge